UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 25-351 (JWB/JFD)

| | |
|---|---|
| UNITED STATES OF AMERICA, | **SUPERSEDING INDICTMENT** |
| Plaintiff, | 18 U.S.C. § 2 |
| | 18 U.S.C. § 1035 |
| v. | 18 U.S.C. § 1343 |
| | 18 U.S.C. § 1347 |
| CHRISTOPHER ADESOJI FALADE, | 18 U.S.C. § 1349 |
| EMMANUEL OLUWADEMILADE FALADE, | 18 U.S.C. § 981(a)(1)(C) |
| and ERNISHA ROBERTS, | 21 U.S.C. § 853(p) |
| | 28 U.S.C. § 2461(c) |
| Defendants. | |

THE UNITED STATES GRAND JURY CHARGES THAT:

At times relevant to this Superseding Indictment:

1.      Medicaid was a health and long-term care coverage program jointly financed by states and the federal government pursuant to the Social Security Act of 1965 that provided benefits to individuals and families who met specified financial and other eligibility requirements, and certain other individuals who lacked adequate resources to pay for medical care. The Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services, was responsible for overseeing Medicaid in participating states, including Minnesota.

2.      Individuals who received benefits under Medicaid were referred to as "recipients."

3.      Medicaid was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

SCANNED
JUL 0.7 2026
U.S. DISTRICT COURT MPLS

*United States v. Falade, et al.*

4.    Each state, including Minnesota, established and administered its own Medicaid program and determined the type, amount, duration, and scope of services covered within broad federal guidelines.

5.    Medicaid covered the costs of medical services and products ranging from routine preventive medical care for children to institutional care for the elderly and disabled. Service providers were authorized to submit claims to Medicaid only for services and products they actually rendered and were required to maintain patient records verifying the provision of services and products. By submitting a claim, the provider certified, among other things, that the services and products were medically necessary, rendered to the patient as represented, and not rendered as a result of kickbacks or bribes.

6.    In Minnesota, Medicaid was administered by the Minnesota Department of Human Services ("DHS").

7.    DHS contracted with private Managed Care Organizations, including HealthPartners, to administer Medicaid in Minnesota. DHS and Managed Care Organizations, including HealthPartners, were health care benefit programs as defined by Title 18, United States Code, Section 24(b).

**A.    Background on Minnesota's Housing Stabilization Services Program**

8.    Beginning in or around July 2020, DHS began operating the Housing Stabilization Services ("HSS") Program ("the Program"), which was funded through the state's Medicaid program. The Program was designed to help seniors and people

2

*United States v. Falade, et al.*

with disabilities, including mental illness and substance use disorders, find and maintain housing.

9.    The Program permitted reimbursements for four principal kinds of services:

(a) Housing consultation, during which a consultant (like a social worker or nurse) helped a recipient complete a DHS form called a Person-Centered, Housing Focused Plan. The form required minimal information. Consultants could bill Medicaid about $174 for a consulting session.

(b) Housing transition services, during which a provider helped a recipient plan for, find, and move into housing. Providers could bill approximately $68 per hour of transition services provided.

(c) Housing sustaining services, during which a provider helped a recipient keep his or her housing after he or she had moved in (including through behavioral management of the recipient). Providers could bill approximately $68 per hour of sustaining services provided.

(d) Moving expenses of up to $3,000, subject to conditions.

10.    The Program had the following requirements to enroll as a provider: (i) be at least 18 years old, (ii) submit an enrollment application to DHS, (iii) undergo a background check, and (iv) complete approximately five hours of online training videos.

11.    The Program had the following requirements to enroll as a recipient: (i) be at least 18 years old, (ii) have Medicaid coverage, (iii) have a documented disability or "disabling condition," and (iv) be experiencing housing instability. To receive billable services, a recipient meeting these requirements was required to complete a form called a Person-Centered, Housing Focused Plan, detailing their housing challenges and needs. Once submitted, the recipient could enroll with a provider, and the provider could start billing the Program.

*United States v. Falade, et al.*

12.  To bill, a provider submitted the names of the recipients serviced, the type of billable services provided, and the number of hours worked.

**B.    The Defendants and Their Roles**

13.  EMMANUEL OLUWADEMILADE FALADE incorporated Faladcare Inc. ("Faladcare"), a Minnesota corporation operating in Little Canada and Woodbury, Minnesota, in or around October 2019. In or around February 2021, EMMANUEL FALADE enrolled Faladcare as a Home and Community-Based Services Provider with DHS, identifying himself as the company's 100% owner.

14.  CHRISTOPHER ADESOJI FALADE, EMMANUEL FALADE's father, was identified in Faladcare's DHS enrollment application as Faladcare's only managing employee. CHRISTOPHER FALADE was the only signatory on Faladcare's business account with Financial Institution #1 ending in x0776 and identified himself as the President of Faladcare in opening the account.

15.  EMMANUEL FALADE and CHRISTOPHER FALADE worked together to operate Faladcare as a purported HSS Program provider.

16.  ERNISHA ROBERTS was an employee of Faladcare whose duties included providing HSS to Faladcare clients.

17.  Through Faladcare, EMMANUEL FALADE, CHRISTOPHER FALADE, and their employees, including ERNISHA ROBERTS, were supposed to provide housing consulting, transitioning, and sustaining services to qualifying people in need. Faladcare was paid at quarter-hourly rates and with Medicaid dollars based on the services it claimed to have provided.

4

*United States v. Falade, et al.*

### The Scheme to Defraud the HSS Program

18.    From in or around February 2021 through in or around June 2025, in the State and District of Minnesota and elsewhere, defendants CHRISTOPHER ADESOJI FALADE, EMMANUEL OLUWADEMILADE FALADE, and ERNISHA ROBERTS did knowingly devise and participate in a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, and in doing so, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme.

19.    It was the purpose of the scheme for the defendants to unlawfully enrich themselves, by, among other things: (a) submitting and causing the submission of false and fraudulent claims to the HSS Program (i) that inflated the number of hours of services actually provided, (ii) for services that were not provided, and (iii) for services that were not eligible for reimbursement; (b) concealing the submission of false and fraudulent claims to the HSS Program and the receipt and transfer of proceeds of the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendants and others, and to further the fraud scheme.

*United States v. Falade, et al.*

20.    The manner and means by which the defendants executed the scheme included, among other things, the following:

a.    In or around February 2021, EMMANUEL FALADE enrolled Faladcare with DHS to operate as an HSS provider. In the Provider Agreement, EMMANUEL FALADE represented that Faladcare would submit accurate claims, refund any overpayments for fraudulent billing, and maintain records that disclosed the services that Faladcare provided to Medicaid recipients.

b.    CHRISTOPHER FALADE, EMMANUEL FALADE, and ERNISHA ROBERTS knowingly and willfully submitted, and directed others to submit, claims to Medicaid for HSS for identical numbers of hours per Medicaid recipient every day when, in fact, those services were not actually provided or were significantly inflated.

c.    CHRISTOPHER FALADE and EMMANUEL FALADE knowingly and willfully submitted, and directed others to submit, claims to Medicaid for an impossible number of hours per Medicaid recipient per day, including claims for 18 and 20 hours per day, when in fact those services were not actually provided or were significantly inflated.

d.    CHRISTOPHER FALADE and EMMANUEL FALADE paid illegal bribes to Medicaid recipients, including through cash and other means, in exchange for using their Medicaid number to bill Medicaid for HSS that the Medicaid recipients did not actually receive. For example, CHRISTOPHER FALADE and

6

*United States v. Falade, et al.*

EMMANUEL FALADE paid one Medicaid recipient illegal bribes totaling at least $250,000.

e.    CHRISTOPHER FALADE, EMMANUEL FALADE, and ERNISHA ROBERTS knowingly and willfully submitted, and directed others to submit, claims to Medicaid for (i) more services than Faladcare provided to Medicaid recipients; and (ii) services that Faladcare did not provide.

f.    CHRISTOPHER FALADE, ERNISHA ROBERTS, and others falsified records, including case notes describing services that Faladcare purportedly provided to recipients, and submitted falsified records to insurers and auditors, including HealthPartners, to justify the false and fraudulent claims and prevent recoupment of illicitly obtained Medicaid funds.

g.    From in or around February 2021 through in or around July 2025, CHRISTOPHER FALADE, EMMANUEL FALADE, and ERNISHA ROBERTS, through Faladcare, billed and caused to be billed Minnesota Medicaid approximately $2.2 million for HSS purportedly provided to Medicaid recipients. Medicaid paid approximately $2.2 million based on these false and fraudulent claims.

## Count 1
(Conspiracy to Commit Health Care Fraud and Wire Fraud)

21.    Paragraphs 1 through 20 of this Superseding Indictment are re-alleged and incorporated herein.

22.    Between in or around February 2021 and in or around June 2025, in the State and District of Minnesota and elsewhere, CHRISTOPHER ADESOJI FALADE, EMMANUEL OLUWADEMILADE FALADE, and ERNISHA ROBERTS did

*United States v. Falade, et al.*

knowingly and willfully, that is with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to commit offenses against the United States, that is:

        a.      To knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicaid, in connection with the delivery of, and payment for, health care benefits, items, and services, by causing the submission of false and fraudulent claims to Medicaid, in violation of Title 18, United States code, Section 1347; and

        b.      To knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

    All in violation of Title 18, United States Code, Section 1349.

8

*United States v. Falade, et al.*

<u>Counts 2–4</u>
(Health Care Fraud)

23.     Paragraphs 1 through 20 of this Superseding Indictment are re-alleged and incorporated herein.

24.     On or about the dates specified below, in the State and District of Minnesota and elsewhere, CHRISTOPHER ADESOJI FALADE and EMMANUEL OLUWADEMILADE FALADE, aided and abetted by and aiding and abetting others known and unknown to the Grand Jury, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicaid, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicaid, in connection with the delivery of, and payment for, health care benefits, items, and services, by causing the submission of the following false and fraudulent claims to Medicaid:

| Count | Defendant | Medicaid Recipient | Claim Number | Approx. Claim Submission Date | Approx. Date of Service | Approx. Amount Claimed |
|---|---|---|---|---|---|---|
| 2 | CHRISTOPHER FALADE and EMMANUEL FALADE | R.G. | 7233040040 4016441 | November 7, 2023 | July 4, 2023 | $174.45 |
| 3 | CHRISTOPHER FALADE and EMMANUEL FALADE | E.B. | 7240240040 1070469 | January 30, 2024 | November 23, 2023 | $350.40 |
| 4 | CHRISTOPHER FALADE and EMMANUEL FALADE | C.D. | 7250790040 0080306 | March 25, 2025 | December 24, 2024 | $279.68 |

*United States v. Falade, et al.*

Each in violation of Title 18, United States Code, Sections 1347 and 2.

## Counts 5–8
(Wire Fraud)

25.    Paragraphs 1 through 20 of the Superseding Indictment are re-alleged and incorporated by reference herein as though fully set forth herein.

26.    On or about the dates listed below, in the State and District of Minnesota and elsewhere, CHRISTOPHER ADESOJI FALADE and EMMANUEL OLUWADEMILADE FALADE, aided and abetted by and aiding and abetting others known and unknown to the Grand Jury, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Defendant | Date | Wire Details |
|---|---|---|---|
| 5 | CHRISTOPHER FALADE and EMMANUEL FALADE | April 4, 2025 | An email to CHRISTOPHER FALADE and EMMANUEL FALADE attaching three documents and bearing the subject, "Fwd: Service Verification Forms" |
| 6 | CHRISTOPHER FALADE and EMMANUEL FALADE | March 31, 2025 | An email to CHRISTOPHER FALADE attaching a purported patient day sheet as a document named "CCF_000271.pdf" |
| 7 | CHRISTOPHER FALADE and EMMANUEL FALADE | March 31, 2025 | An email to CHRISTOPHER FALADE attaching a purported patient day sheet as a document named "CCF_000272.pdf" |
| 8 | CHRISTOPHER FALADE and EMMANUEL FALADE | May 22, 2025 | An email from EMMANUEL FALADE to HealthPartners with the subject line "Anna records HSS records" |

*United States v. Falade, et al.*

Each in violation of Title 18, United States Code, Sections 1343 and 2.

### Count 9
#### (False Statements Related to Health Care Matters)

27.     Paragraphs 1 through 20 of the Superseding Indictment are re-alleged and incorporated by reference herein as though fully set forth herein.

28.     On or about April 8, 2025, in the State and District of Minnesota and elsewhere, CHRISTOPHER ADESOJI FALADE and ERNISHA ROBERTS, aided and abetted by and aiding and abetting others known and unknown to the Grand Jury, did knowingly and willfully falsify, conceal, and cover up by any trick, scheme, and device a material fact in connection with the delivery of and payment for health care benefits, items, and services; that is, CHRISTOPHER ADESOJI FALADE and ERNISHA ROBERTS created falsified records, including spreadsheets of Clinician Reports that falsified the reported time spent servicing Medicaid recipients and the reported services provided to Medicaid recipients, and submitted those falsified records to HealthPartners in response to a records request as part of an audit of Faladcare's claims submitted to HealthPartners.

In violation of Title 18, United States Code, Sections 1035 and 2.

### FORFEITURE ALLEGATIONS

29.     Counts 1 through 9 of this Superseding Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c).

11

*United States v. Falade, et al.*

30.   If convicted of any of Counts 1 through 9 of this Superseding Indictment, the defendants shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense charged.

31.   If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____   _____

UNITED STATES ATTORNEY          FOREPERSON

12