UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CASE 0:25-cr-00351-JWB-JFD

CHRISTOPHER ADESOJI FALADE and
EMMANUEL OLUWADEMILADE FALADE,

Defendants.

# UNITED STATES' BRIEF IN RESPONSE TO DEFENDANTS' MOTION FOR RELIEF FROM PREJUDICIAL JOINDER OF DEFENDANTS

## Introduction

Defendant Emmanuel Falade, joined by his co-defendant father Christopher Falade, ("the Falades") move to sever their case from co-defendant Erisha Roberts ("Roberts") contending that they will have antagonistic defenses with Roberts that will result in unfair prejudice. (Motion, Doc. No. 117). Count One of the Superseding Indictment charges the Falades and Roberts with conspiracy to commit health care fraud and wire fraud; Counts Two through Four charge the Falades with three counts of health care fraud; Counts Five through Eight charge the Falades with four counts of wire fraud; and Count Nine charges Christopher Falade and Roberts with false statements and aiding and abetting false statements related to health care matters. Because a single trial of properly joined defendants is strongly favored and the

defenses in this case are not so antagonist as to compromise the Falades' trial rights, the Court should deny the motion.

## Argument

### I. LEGAL STANDARD

Federal Rule of Criminal Procedure 8(b) provides that an indictment may charge multiple defendants "if they are alleged to have participated . . . in the same series of acts or transactions constituting an offense or offenses." Rule 8(b) further provides that "the defendants may be charged in one or more counts together or separately" and that "[a]ll defendants need not be charged in each count." Federal Rule of Criminal Procedure 14(a) directs that the district court may sever defendants' trials if the joinder of offenses or defendants "appears to prejudice a defendant or the government."

"These rules are to be 'liberally construed in favor of joinder.'" *United States v. Darden*, 70 F.3d 1507, 1526 (8th Cir. 1995) (*quoting United States v. Rimell*, 21 F.3d 281, 288 (8th Cir. 1994)). Thus, "[p]ersons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together, even if each defendant did not participate in or was not charged with each offense." *United States v. Gravatt*, 280 F.3d 1189, 1191 (8th Cir. 2002); *see* also *United States v. Voss*, 787 F.2d 393, 401 (8th Cir. 1986) ("[P]ersons charged in the same offense should be tried together, especially when proof against them is based upon the same evidence or acts.");

*United States v. Beasley*, 102 F.3d 1440, 1448 (8th Cir. 1996) ("Where codefendants are charged with the same crimes . . . and the crimes of the codefendants will be proved by the same evidence, joint trials are generally favored."). "This preference is 'especially compelling when the defendants are charged as coconspirators.'" *United States v. Anderson*, 783 F.3d 727, 743 (8th Cir. 2015) (*quoting United States v. Basile*, 109 F.3d 1304, 1309 (8th Cir.1997)).

To grant a motion for severance, the necessary prejudice must be "severe or compelling." *United States v. Warfield,* 97 F.3d 1014, 1018 (8th Cir.1996). This is because "[t]rying codefendants together not only conserves scarce time and resources, but also 'gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'" *United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006) (quoting *Darden*, 70 F.3d at 1528).

In *Zafiro v. United States*, 506 U.S. 534, 535 (1993), the Supreme Court considered "whether Rule 14 requires severance as a matter of law when codefendants present 'mutually antagonistic defenses.'" The Court rejected the petitioners' argument that it adopt a bright-line rule:

> mandating severance whenever co-defendants have conflicting defenses finding that "[m]utually antagonistic defenses are not prejudicial per se. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.

*Id*. at 538–39. The Supreme Court directed that the only time a district court should grant a severance is "if there is a serious risk that a joint trial would

compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 539 "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.*; *see also United States v. Sandstrom*, 594 F.3d 634, 644–45 (8th Cir. 2010).[1]

Consequently, the Eighth Circuit held in cases after the *Zafiro* decision that:

> even irreconcilable defenses "are not prejudicial per se." *Zafiro*, 506 U.S. at 538 . . . "Antagonistic defenses require severance 'only when there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'" *Lewis*, 557 F.3d at 610 (ellipsis omitted) (*quoting United States v. Ortiz*, 315 F.3d 873, 898 (8th Cir.2002)). "It is not sufficient that one defendant be taking the position that he knew nothing of the crime while asserting that his codefendant was involved." *Id*. (*quoting United States v. Lynch*, 800 F.2d 765, 768 (8th Cir.1986)).

*United States v. Anderson*, 783 F.3d 727, 743 (8th Cir. 2015). Thus, "[t]he mere fact that one defendant tries to shift blame to another defendant does not mandate separate trials." *United States v. Mason*, 982 F.2d 325, 328 (8th Cir. 1993). Finally, even where some prejudice is identified, the court must balance:

---

[1] Defendants' cite language from Justice Stevens' concurrence in *Zafiro* in support of their argument. The Government notes that *Zafiro* was a unanimous opinion with Justice Stevens, joined by no other Justices, concurring only in the judgment.

> "the inconvenience and expense of separate trials against the prejudice resulting from a joint trial." *Pherigo*, 327 F.3d at 693; *see also Hively*, 437 F.3d at 765 (where multiple defendants have been charged in the same indictment, "there is a preference for a joint trial unless the benefits are outweighed by a clear likelihood of prejudice"). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro*, 506 U.S. at 541.

*United States v. Thao*, No. 21CR10824PAMTNL, 2021 WL 5564557, at *3 (D. Minn. Nov. 29, 2021).

## **Argument**

The Falades contend that they will be unfairly prejudiced by a joint trial with Roberts because they maintain antagonistic defenses with Roberts. Emmanuel Falade asserts that his defense is "there was no fraud perpetrated at Faladcare," and Roberts's defense is that "the Falades defrauded the housing stability program, but as an employee, she was powerless to stop it." (Motion, Doc. No. 117 at 3-4). However, as set forth below, an attempt by Roberts to simply shift blame to her co-defendants is not the sort of antagonistic defense meriting severance.

### A. The Government's Evidence at Trial Is Expected To Demonstrate That the Falades and Roberts Each Falsified Records In Support of the Scheme to Defraud.

Here, the allegations and expected trial testimony are that the Falades and Roberts conspired to defraud the Minnesota Department of Human Services ("DHS") and the various Managed Care Organizations ("MCOs") that

administered the Housing Stabilization Services Program. As alleged, the evidence at trial is expected to demonstrate that Emmanuel Falade owned and his father Christopher Falade managed Faladcare, an agency enrolled with the state to provide housing stabilization services ("HHS"), and Ernisha Roberts was an employee of Faladcare. (Sup. Indict., Doc. No. 82, at ¶¶ 13-16). More specifically, the Superseding Indictment alleges that all three co-conspirators submitted and caused the submission of false HSS claims that "inflated the number of hours of services actually provided" and that were "for services that were not provided . . . ." (*Id*. at ¶ 19). The Superseding Indictment also alleges that Christopher Falade and Roberts falsified records and aided and abetted the falsification of records in response to an audit by one of the MCOs. (*Id*. at ¶¶ 20f and 28).

Based on witness interviews and records and as just one part of its proofs, the Government expects to show as that, in response to an MCO audit of Faladcare's HSS claims, Christopher Falade obtained past billing records so that time sheets and service records could be fabricated to match services that had been fraudulently billed.

On Sat, Mar 29, 2025 at 3:46 PM Chris Falade <cfaladus@gmail.com> wrote:

Kevin: can you get back to me on this asap? Healthpartners team will visit office or ask for refund if medical record requests are not sent within two weeks from now.

Emmanuel: Can you print out the billing records for any IHS clients on this list?

Jess: Can you send me the billing records for the ICLS and HSS clients on this list?

Thank you.

Christopher Falade then forwarded that billing information to Roberts and another employee and directed them to create Clinician Report spreadsheets reflecting that services were provided for the dates and times billed, in most instances for five hours/day and for five days/week. Roberts and the other employee created the spreadsheets knowing they were to be submitted as part of the audit and also knowing that the five day/week services were not consistent with the services that actually provided as set forth in this example:

Clinician Report

| | |
|---|---|
| Report Description: | |
| Prepared By: | [redacted] Program Coordinator |
| Individual Name: | [redacted] |
| Date Range: | 04/01/2024 - 03/31/2025 |

**Housing Support Supplemental Services (HSS)**

| | |
|---|---|
| Form ID: | ISP-FALADMN-P663TT6REEKRP |
| Status: | Approved |
| ISP Program: | Housing Support Supplemental Services (HSS) |
| Frequency: | 7 |
| Schedule: | Weekly |
| Schedule and | |
| Goal/Service: | Faladcare will provide Housing Support supplemental services to help individuals |
| Criteria for | individuals will participate Housing Supplemental Supportive Services at least one |
| Time Zone: | US/Central |

| Date | Begin Time | End Time | Duration (hh:mm) | Duration (minutes) | Location | Service Provider | Comment |
|---|---|---|---|---|---|---|---|
| 04/01/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |
| 04/02/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |
| 04/03/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | Staff sent CaDa several links to view several properties to see if any interest him. The Hallon Lux Apartments, Cedar Hills, Ovation Apartments, Cambridge St |
| 04/04/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |
| 04/05/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |
| 04/07/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |
| 04/08/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |
| 04/09/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | Staff checked in with CaDa about his housing situation and the area he would like to reside in. Staff will continue assisting CaDa with daily housing needs. No other |
| 04/10/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |
| 04/11/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |
| 04/12/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |
| 04/14/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |
| 04/16/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |
| 04/17/2024 | 07:00 AM | 12:00 PM | 05:00 | 300 | | Faladcare, INC | |

Generated from Therap 'Clinician Report for ISP Program' b[redacted]rogram Coordinator, Provider : Faladcare, Inc. on 04/04/25 07:36 PM. Page: 1/4

And Roberts then forwarded the spreadsheets to Christoper Falade, copying Emmanuel Falade, so they could submit the falsified records in response to the audit.

**From:** Ernisha Roberts [redacted]
**To:** Chris Falade <cfaladus@gmail.com>
**Cc:** Emmanuel Falade <emanfalade@gmail.com>
**Subject:** Fwd: Service Verification Forms
**Date:** Fri, 4 Apr 2025 22:41:04 -0500
**Attachments:** [redacted]

---

Ernisha Roberts HSS
Program Coordinator
[redacted]
6516662111 office
[redacted]

Faladcare INC
2882 Middle St Little Canada

Hi Dr Chris

Please see the attached services verification forms requested from Faladcare, Inc.

Thanks!

Thus, the thrust of the Government's case is that the Falades and Ms. Roberts were all involved in the fraud scheme and the attempted concealment in response to the audit.

### B. That Ms. Roberts May Attempt to Shift Blame to One or More of Her Co-Defendants Does Not Establish The Sort of Irreconcilable Defenses That Establish a Clear Likelihood of Prejudice.

That Roberts may try to escape culpability by shifting blame to her co-defendants (and co-conspirators) does not pose the sort of irreconcilable defense meriting severance. And an examination of the Eighth Circuit decisions demonstrates just this.

"'A defense is irreconcilable when the jury, to believe the core of one defense, must necessarily disbelieve the core of another.'" *United States v. Anderson*, 783 F.3d 727, 743 (8th Cir. 2015) (q*uoting United States v. Lewis*, 557 F.3d 601, 610 (8th Cir. 2009)). In *United State v. Johnson*, 944 F.2d 396. 402-03 (8th Cir. 1991), the Eighth Circuit affirmed the district court's denial of a motion to sever where it was:

> clear that the jury chose not to believe any of the defendants. The jury was not, however, in a position where it must have disbelieved one defense in order to accept another. That is, had the jury chosen to believe that Johnson was not involved in the drug trafficking it could also have believed that Brooks, Miller, or Wilson was not involved.

Similarly, in the *Anderson* case, the Eighth Circuit noted that to "believe the core of Anderson's defense, the jury did not necessarily have to disbelieve the core of Pisciotta's defense. . . . Rather, the jury could have credited either, both, or—as it turned out—neither of their defenses." *Anderson*, 783 F.3d at 743–44. And in the *Mason* case:

> Sumpter testified that she was unaware that Mason had cocaine on his person until she stopped the car in response to the police car lights. She testified that once she stopped the car Mason stated, "Are you crazy? I have got coke on me." In response, Sumpter sped off in a failed attempt to evade arrest. She testified that during the chase Mason instructed her to keep driving while he threw the cocaine out the window.

*Mason*, 982 F.2d at 327-28. Even on these facts, the "defense was not so antagonistic as to require a severance of the trial. Mason does not argue that Sumpter's defense would "inescapably inculpate him." *Id.* at 328.

Here, even if Roberts were to defend herself by blaming the Falades for creating false records and submitting false claims, the jury would not be presented with the situation where they had to reject one defense in order to accept another. That would be the case, for example, if the Defendants all admitted there were fraudulent claims submitted but, for example, Roberts blamed the Falades and the Falades blamed Roberts. Their defenses would at least be arguably irreconcilable (albeit not sufficient per se to merit a severance). But the Falades acknowledge that their defense is that "there was no fraud perpetrated at Faladcare." (Motion, Doc. No. 117, at 3.). Thus, the jury does not have to reject one defense in order to accept another. Like the cases cited above, the jury could believe, as the Government asserts, that they were all actively involved in the fraud, that only the Falades committed the fraud, or that no fraud occurred at all.

### C. The Government Does Not Intend To Introduce Roberts's Statement Into Evidence, and The Court Can Address Any Concerns Implicating Other Constitutional Protections Through Evidentiary Rulings, Motions in Limine, and Instructions to the Jury.

The Falades raise the always legitimate concern regarding the admission into evidence of a defendant's statement to law enforcement that would implicate a co-defendant's confrontation rights pursuant to *Bruton v. United States*, 391 U.S. 123 (1968). However, consistent with the Government previous response to an inquiry by Roberts's counsel, the Government does not intend to introduce Roberts's statement to law enforcement at trial.

The Falades also express concern that a possible source of prejudice could arise from the Falades deciding not to testify and Roberts's counsel pointing out that circumstance in support of Roberts's defense. But such a concern is exactly the sort of circumstance the Supreme Court acknowledged in *Zafiro* that can be obviated by the trial court in a motion in limine or jury instruction.[2]

[2] Defendants cite *United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991) in support of this argument; however, *Tootick* was decided two years before the Supreme Court's *Zafiro* decision which another court notes implicitly overruled *Tootick*. *See People v. McNeely*, No. A141557, 2017 WL 65832, at *9 (Cal. Ct. App. Jan. 6, 2017).

## Conclusion

This case involves classic conspiracy allegations involving multiple defendants where the crimes of the coconspirators will be proven by the same evidence. Not only will trying the alleged coconspirators together conserve scarce time and resources but, as the Eighth Circuit has repeatedly observed, a single trial will give "the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." *Hively*, 437 F.3d at 765. Given the Falades have not established the sort of irreconcilable defenses that would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence as the Supreme Court described in *Zofiro*, the Government respectfully contend that the Court should deny the Falades' motion to sever.

Respectfully submitted,

Date: October 22, 2026

DANIEL N. ROSEN
United States Attorney
District of Minnesota

COLIN M. MCDONALD
Assistant Attorney General
National Fraud Enforcement Division
United States Department of Justice

By: _/s/ Raymond E. Beckering III_
Raymond E. Beckering III
Trial Attorney
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
202-262-8176
Raymond.Beckering.III@usdoj.gov