**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

Plaintiff,

v.

Christopher Adesoji Falade (1), Emmanuel Oluwademilade Falade (2), Ernisha Roberts (3),

Defendant.

Case No. 25-cr-351 (JWB/JFD)

**REPORT AND RECOMMENDATION**

This case is before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1 for a Report and Recommendation on several pretrial motions filed by Defendants Christopher Adesoji Falade, Emmanuel Oluwademilade Falade, and Ernisha Roberts. These motions include: (1) Mr. Emmanuel Falade's Motion to Sever Defendant for Trial (Dkt. No. 117); (2) Ms. Roberts's Motion to Suppress (Dkt. No. 118); (3) Ms. Roberts's Motion to Dismiss Count One as Duplicitous (Dkt. No. 119); (4) Mr. Christopher Falade's Motion to Suppress (Dkt. No. 120); and (5) Mr. Christopher Falade's Motion to Join Codefendant's Motion for Relief from Prejudicial Joinder of Defendants (Dkt. No. 122). (Ms. Roberts has not moved to sever her case from that of the Falades.) The Superseding Indictment charges all three Defendants with one count of Conspiracy to Commit Health Care Fraud and Wire Fraud in violation of 18 U.S.C. §§ 1347, 1343, and 1349; Christopher and Emmanuel Falade ("the Falades") with three counts of Health Care Fraud in violation of 18 U.S.C. §§ 1347 and 2; the Falades

with four counts of Wire Fraud in violation of 18 U.S.C. §§ 1347 and 2; and Mr. Christopher Falade and Ms. Roberts with one count of False Statements Related to Health Care Matters in violation of 18 U.S.C. §§ 1035 and 2. (Dkt. No. 82.)

The Court held a hearing on these motions on October 29, 2026. Department of Justice Trial Attorney Raymond Beckering, III represented the Government and Attorneys Ryan M. Pacyga and Marie Celine Pacyga represented Mr. Christopher Falade, Attorney Robert D. Richman represented Mr. Emmanuel Falade, and Attorney Aaron J. Morrison represented Ms. Roberts. For the reasons stated on the record and without objection by the Government, the Court granted Mr. Christopher Falade's non-dispositive Motion to Join Codefendant's Motion (Dkt. No. 122) from the bench at the motions hearing. The Court took the remaining motions under advisement. For the following reasons, the Court recommends that the Falades' Motion to Sever (Dkt. No. 117)[1] be denied; Ms. Roberts's Motion to Suppress (Dkt. No. 118) be denied as moot; Ms. Roberts's Motion to Dismiss Count One as Duplicitous (Dkt. No. 119) be denied; and Mr. Christopher Falade's Motion to Suppress (Dkt. No. 120) be denied.

## I. BACKGROUND

On September 17, 2025, a grand jury returned an Indictment against the Falades. (Dkt. No. 1.) Ten months later, a grand jury returned a Superseding Indictment against the Falades which added Ms. Roberts as a defendant. (Dkt. No. 82.) The Superseding

[1] Because the Court granted Mr. Christopher Falade's Motion (Dkt. 122) to Join Mr. Emmanuel Falade's Severance Motion (Dkt. No. 117) at the October 29, 2026 hearing, the Court refers to Dkt. No. 117 as the "Falades' Motion."

Indictment alleged that the Falades and Ms. Roberts were in a conspiracy to defraud a health care benefit program affecting commerce (Medicaid) by means of "materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, and in doing so, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme." (*Id.* at 5.)[2] The Superseding Indictment charged all three defendants with conspiracy to commit health care fraud and wire fraud, charged the Falades with three counts of health care fraud and four counts of wire fraud, and charged Mr. Christopher Falade and Ms. Roberts with making false statements relating to health care services. (*Id.* at 7-11.)

## II. DISCUSSION

### A. The Falades' Motion to Sever

The Falades move for relief from prejudicial joinder of defendants pursuant to Federal Rule of Criminal Procedure 14 and seek an order that the Falades be tried separately from their codefendant, Ms. Roberts. (Dkt. No. 117 at 1-2.) The Falades argue

[2] For additional context, the Superseding Indictment alleged that Mr. Emmanuel Falade incorporated Faladcare Inc. ("Faladcare") and enrolled Faladcare as a Home and Community-Based Services Provider with the Minnesota Department of Human Services ("DHS"), that Mr. Christopher Falade was identified in Faladcare's DHS enrollment application as Faladcare's only managing employee, and that Ms. Roberts was an employee of Faladcare whose duties included providing housing stability services ("HSS") to Faladcare clients. (Dkt. No. 82 at 4.)

that this relief is warranted due to mutually antagonistic or irreconcilable defenses. (*Id.* at 2-3.) The Government opposes this motion because "a single trial of properly joined defendants is strongly favored and the defenses in this case are not so antagonist [sic] as to compromise the Falades' trial rights." (Dkt. No. 128 at 1-2.)[3]

Federal Rule of Criminal Procedure 8 governs the joinder of multiple criminal defendants in a single indictment,

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). The Eighth Circuit has upheld joinder when "the indictment reflects a sequence of connected events with the defendants being involved at various points in the continuum." *United States v. Rimell*, 21 F.3d 281, 289 (8th Cir. 1994). There is a general presumption that "persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together." *United States v. Thompson*, 690 F.3d 977, 988 (8th Cir. 2012) (quoting *United States v. Lewis*, 557 F.3d 601, 609 (8th Cir. 2009)).

Rule 14 allows the court to order severance even if joinder was proper under Rule 8(b), "[i]f the joinder of … defendants in an indictment, an information, or a consolidation

[3] Ms. Roberts also submitted a Declaration (Dkt. No. 133) which the CM/ECF docket entry—but not the Declaration itself—identifies as being in support of the Government's opposition (Dkt. No. 128) to the Falades' Motion for Relief from Prejudicial Joinder (Dkt. No. 117). At the October 29, 2026 hearing, Ms. Roberts indicated that she was submitting this affidavit to establish that if she were to testify, Mr. Christopher Falade might cross-examine her on privileged patient-provider material.

for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). This prejudice must be "severe or compelling." *United States v. Anderson*, 783 F.3d 727, 743 (8th Cir. 2015).

The Supreme Court in *Zafiro v. United States* considered "whether Rule 14 requires severance as a matter of law when codefendants present 'mutually antagonistic defenses.'" 506 U.S. 534, 535 (1993). The Court held that "[m]utually antagonistic defenses are not prejudicial *per se*" and declined to adopt a bright-line rule mandating severance whenever codefendants have conflicting defenses. *Id.* at 538. "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538-39. Moreover, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. In this Circuit, the "existence of antagonistic defenses does not require severance unless the defenses are actually irreconcilable." *United States v. Johnson*, 944 F.2d 396, 402 (8th Cir. 1991.)

The Eighth Circuit has held that "a defense is irreconcilable when the jury, to believe the core of one defense, must necessarily disbelieve the core of another." However, the "mere fact that one defendant tries to shift blame to another defendant does not mandate separate trials." *Id.* at 403 (citing *United States v. Jones*, 880 F.2d 55, 63 (8th Cir. 1989)); *see also Lewis*, 557 F.3d at 609 ("a defendant must show that his defense was irreconcilable with that of the codefendant or that the jury was unable to compartmentalize the evidence."). Antagonistic defenses also require severance "only when there is a danger that

the jury will unjustifiably infer that this conflict [between the antagonistic defenses] alone demonstrates that both are guilty." *Lewis*, 557 F.3d at 610 (quoting *United States v. Ortiz*, 315 F.3d 873, 898 (8th Cir. 2002)).

The Falades, relying on Justice Stevens's concurrence in *Zafiro v. United States*, contend that they will be prejudiced in two ways by the mutually antagonistic defenses. (Dkt. No. 117 at 2-3.) First, "joinder may introduce what is in effect a second prosecutor into a case, by turning each codefendant into the other's most forceful adversary." *Zafiro v. United States*, 506 U.S. 534, 544 (1993) (Stevens, J., concurring). Second, "joinder may invite a jury confronted with two defendants, at least one of whom is almost certainly guilty, to convict the defendant who appears the more guilty of the two regardless of whether the prosecutor has proven guilt beyond a reasonable doubt as to that particular defendant." *Id.*

The Falades assert that their anticipated defense is that "there was no fraud perpetrated at Faladcare,"[4] while Ms. Roberts's anticipated defense is that "the Falades defrauded the housing stability program, but as an employee, she was powerless to stop it." (Dkt. No. 117 at 3-4.) The Falades argue that these defenses are irreconcilable because "there is no way the jury could accept Ms. Roberts' defense and acquit [the Falades]," or if the jury is suspicious of both claims, that they would be more likely to convict the Falades. *Id.* at 4. The Government contends that this "attempt by Roberts to simply shift

[4] At the October 29, 2026 hearing, the Falades anticipated raising an alternative/affirmative defense, which can be generalized as, if there was fraud, then Ms. Roberts acted alone in perpetrating the fraud.

blame to her co-defendants is not the sort of antagonistic defense meriting severance." (Dkt. No. 128 at 5.)

There are four potential verdicts that could be reached without the Defendants' defenses being irreconcilable. First, a jury could acquit the Falades and also Ms. Roberts. That would mean a jury believes the Falades when they assert that no fraud took place, and believes Ms. Roberts in part (when she says she herself did not commit fraud) and disbelieves Ms. Roberts in part (when she says the Falades did commit fraud). Thus, a finding that no fraud took place does not require a jury to disbelieve the core of Ms. Roberts's defense to believe the core of the Falades' defense, or vice versa. Second, a jury could convict all the Defendants, finding that fraud did take place, and everyone was involved. This means that a jury would disbelieve the Falades' defenses and would also disbelieve Ms. Roberts's defenses. Similar to the outcome of all defendants being acquitted, a finding that everyone was guilty of committing fraud does not require a jury to disbelieve the core of Ms. Roberts's defense to believe the core of the Falades' defense.

Turning to split verdicts, a third scenario is that a jury could convict the Falades and acquit Ms. Roberts. This would mean a jury believes Ms. Roberts and disbelieves the Falades. In this outcome, the Falades' and Ms. Roberts's defenses are antagonistic, with that antagonism taking the specific form of each party shifting the blame onto the other. Finally, a jury could acquit the Falades and convict Ms. Roberts. Similarly, this means that a jury would believe the Falades and disbelieve Ms. Roberts and assign all the fraud to her, due to each party shifting the blame onto the other. However, believing one defendant and disbelieving the other due to blame shifting, does not, under the holdings of the cases

above, mean that a jury would be unable to compartmentalize the evidence individually as to each Defendant. *See Lewis*, 557 F.3d at 609. Therefore, these defenses, despite being antagonistic, are not irreconcilable nor do they pose a danger that the jury will unjustifiably infer that this conflict in defenses, on its own, demonstrates that the Falades and Ms. Roberts are all guilty. Because blame-shifting is not the type of antagonistic defense that requires severance, a split verdict does not require severance, and because verdicts of all defendants being found guilty or all defendants being found not guilty do not require the jury to disbelieve the core of any defense, severance is not merited. *See Lewis*, 557 F.3d at 610.

The Court finds that the Falades' and Ms. Roberts's defenses are not irreconcilable, as a jury would not be required to disbelieve the core of the Falades' defense in order to believe the core of Ms. Roberts's defense, or vice versa. *See Lewis*, 557 F.3d at 610 ("the crux of Tyron Lewis's defense was that the government failed to prove that he intended to defraud anyone, was aware of any crimes, or agreed to commit any crimes. This defense was not actually irreconcilable with Cameron Lewis's defense that no fraud was committed."); *see also Anderson*, 783 F.3d at 743-44 ("To believe the core of Anderson's defense, the jury did not necessarily have to disbelieve the cory of Pisciotta's defense. Rather, the jury could have credited either, both, or—as it turned out—neither of their defenses."). A jury could weigh the evidence against each defendant in "relative isolation and reach independent verdicts on the guilt of each, accepting or rejecting their separate defenses to the specific charges against them." *Lewis*, 557 F.3d at 610.

Accordingly, the Court finds that the defenses at issue do not present the serious

risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence, and therefore recommends denying the Falades' Motion (Dkt. No. 117).

**B. Ms. Roberts's Motion to Suppress**

There is no dispute as to Ms. Roberts's Motion to Suppress (Dkt. No. 118). The Government conceded that it "does not intend to admit any evidence obtained from the personal laptop or bag containing personal items at issue in any trial or other proceedings involving [Ms. Roberts]." (Dkt. No. 132.) At the October 29, 2026 hearing, the Government and Ms. Roberts agreed that the Government's position renders the motion moot. Therefore, the Court recommends that Ms. Roberts's Motion to Suppress (Dkt. No. 118) be denied as moot.

**C. Ms. Roberts's Motion to Dismiss Count One as Duplicitous**

Ms. Roberts moves to dismiss Count One of the Superseding Indictment (Dkt. No. 82) as duplicitous because the count "charges both a conspiracy to commit health care fraud and wire fraud which have different elements and statutory penalties." (Dkt. No. 119 at 1.) The Government opposes this Motion and argues that a conspiracy that alleges multiple conspiratorial objects, such as the one charged in Count One, is not duplicitous. (Dkt. No. 126 at 1.) For the following reasons the Court recommends denying Ms. Roberts's Motion (Dkt. No. 119.)

"Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Nattier*, 127 F.3d 655, 657 (8th Cir. 1997) (quoting *United States v. Street*, 66 F.3d 969, 974 (8th Cir.1995)). "The principal vice of a duplicitous

indictment is that the jury may convict a defendant without unanimous agreement on the defendant's guilt with respect to a particular offense." *Id.* (citing *United States v. Karam*, 37 F.3d 1280, 1286 (8th Cir. 1994)). However, the risk in a duplicitous count "may be cured by a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act." *Id.*

The Supreme Court has long held that an "allegation in a single count of a conspiracy to commit several crimes is not duplicitous." *Braverman v. United States*, 317 U.S. 49, 54 (1942). Rule 12 of the Federal Rules of Criminal Procedure provides that a claim of indictment duplicity "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B)(i). The Eighth Circuit also requires duplicity challenges to be raised pretrial to preserve challenges on appeal. *See United States v. Paul*, 885 F.3d 1099, 1104 (8th Cir. 2018); *United States v. Fry*, 792 F.3d 884, 888-89 (8th Cir. 2015).

Ms. Roberts acknowledges the Supreme Court precedent set by *Braverman* and the Eighth Circuit's requirement for duplicity challenges to be raised pretrial to preserve challenges on appeal. (Dkt. No. 119 at 1.) However, Ms. Roberts argues that Count One—alleging a single conspiracy to commit both health care fraud and wire fraud—contains two distinct crimes, each with distinct elements, and that "[j]oining them together under a conspiracy liability umbrella stretches the holding of *Braverman*, beyond workability and into duplicity." (*Id.* at 2.) Specifically, she argues that "if the jury found Ms. Roberts guilty of the conspiracy, the Court does not know if she is guilty based on committing health care fraud or wire fraud." (*Id.*) The Government, relying on *Braverman*, opposes this Motion

and contends that the conspiracy charged in Count One is not duplicitous. (Dkt. No. 126 at 1-2.)

The Supreme Court has clearly held that "[t]he allegation in a single count of a conspiracy to commit several [offenses] is not duplicitous, for [t]he conspiracy is the crime, and that is one, however diverse its objects." *Braverman*, 317 U.S. at 54 (quotations and citations omitted). Moreover, a conspiracy "is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object." *Id.* (citations omitted). Accordingly, the Court recommends Ms. Roberts's Motion to Dismiss Count One as Duplicitous (Dkt. No. 119) be denied.

### D. Mr. Christopher Falade's Motion to Suppress

Mr. Christopher Falade moves to suppress all evidence obtained and derived from the search warrant authorizing the search and seizure of the contents of a Samsung Galaxy cell phone pursuant to the Fourth and Fifth Amendments to the United States Constitution. (Dkt. No. 120.) Specifically, Mr. Falade argues that the search warrant affidavit fails to establish a fair probability that evidence of a crime will be found on the phone that was seized from Mr. Falade upon his arrest. (Dkt. No. 121 at 3.) The Government opposes this Motion and argues that the affidavit establishes a sufficient nexus between the evidence of criminal conduct sought by the search warrant and the cell phone seized from Mr. Falade.

(Dkt. No. 127.) The Court agrees with the Government and therefore recommends that Mr. Falade's suppression motion be denied.

### *1. Nexus*

The Fourth Amendment of the United States Constitution provides "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause exists when the totality of the circumstances shows "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The requirement that contraband or evidence will probably be found in the specific place to be searched is often shorthanded as the "nexus" requirement.

"The nexus required by the Fourth Amendment … is that 'between the contraband [being sought] and the place to be searched.'" *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)). The "requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999). This district has recognized that "the nexus showing required by the Fourth Amendment need not be very significant." *United States v. Rios-Uscanga*, No. 16-CR-316 (RHK/KMM), 2017 WL 1534746, at *3 (D. Minn. Mar. 3, 2017). As a general rule, "the burden of proof is on the defendant who seeks to suppress evidence." *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984) (citing *United States v. Phillips*, 540 F.2d 319 (8th Cir. 1976)).

Mr. Falade argues that the affiant claims in "conclusory terms" that Mr. Falade "routinely used a Samsung Galaxy smartphone" in "many emails" obtained by law enforcement in the investigation of Faladcare. (Dkt. No. 120 at 3 (citing Affidavit ¶ 85, Dkt. No. 124).) Mr. Falade further argues that "the substantive fact supporting this claim is a single email that Mr. Falade allegedly sent in August 2023 concerning a Faladcare lease." (*Id.*) Mr. Falade contends that because the email cited in the affidavit is two years removed from the September 2025 arrest of Mr. Falade, that there are "no facts in this application that tie this particular phone to any crime." (*Id.* at 4.)[5] The Government responds that "this was merely [an] example" of the emails that law enforcement obtained as part of its investigation, and "a factual assertion to which Defendant has not contested its veracity." (*Id.* at 11.) For the following reasons, the Court finds that the issuing magistrate judge correctly determined there was probable cause that the Samsung Galaxy possessed by Mr. Falade at the time of arrest would contain evidence of the alleged crimes.

First, the affidavit sets forth in great detail the context of the investigation into

[5] In response to this argument, the Government cites an Eastern District of Oklahoma case, *United States v. Langford*, No. CR-21-216 (RAW), WL 906035 (E.D. Okla. Mar. 28, 2022), that addresses a similar argument. (Dkt. No. 127 at 9-10). In *Langford*, the Court stated in a footnote: "The Defendant also argues that Detective Cummings failed to provide any reason to believe that the Defendant's phone was the same one she used approximately two years ago when the alleged offenses occurred. The court is not convinced. The court is to apply common sense in determining these issues. The search warrant was issued in June of 2020. Even if the Defendant had replaced her phone between 2017 and 2020, by these dates and in today's world, information from an old phone is commonly transferred to a new phone." *Langford*, at *3 n.5. The Court is persuaded by this logic and finds that the two-year difference between the email and arrest, which Mr. Falade contends destroys nexus between the alleged crimes and the seized Samsung Galaxy, is of no consequence to the Court's probable cause analysis.

Medicaid HSS fraud. (*See* Affidavit ¶¶ 4-34, Dkt. No. 124.) Second, the affidavit establishes probable cause to support the allegations against the Falades for conspiracy to commit wire fraud and healthcare fraud, healthcare fraud, and wire fraud. (*Id.* ¶¶ 35- 85). Third, the affidavit details the circumstances of the execution of the arrest warrant for Mr. Falade. (*Id.* ¶¶ 70-83.) Specifically, when Mr. Falade was arrested, he had two phones—one of which was a Samsung Galaxy—that he was permitted to bring with him. (*Id.*) Mr. Falade "told one or more agents that the two cell phones were his." (*Id.* ¶ 77.) Law enforcement "saw Falade access an email application on the Samsung phone." (*Id.* ¶ 78.) When agents advised Mr. Falade that it was possible those phones would be seized by law enforcement, Mr. Falade first "told the agent that the iPhone was his, but that the [Samsung Galaxy] is his wife's phone;" but after being told that this contradicted his earlier description, Mr. Falade stated that "one phone was his work phone and one was a family phone." (*Id.* ¶ 80.)

Finally, the affiant then sets forth probable cause that evidence, instrumentalities, and fruits of violations of the charged crimes are located on the Samsung Galaxy seized from Mr. Falade. (*Id.* 84-97.) Notably, the affidavit provides that the investigation revealed that Mr. Falade "as part of his co-management of Faladcare … routinely used a Samsung Galaxy smartphone … [as] indicated by many emails obtained by law enforcement." (*Id.* ¶ 85.) Accordingly, the Court finds that the affidavit at issue established the requisite nexus between the criminal activity alleged in the Indictment[6] and the Samsung Galaxy seized

[6] Referring to the September 17, 2025 Indictment the grand jury returned against the Falades (Dkt. No. 1).

from Mr. Falade upon his arrest, and recommends denying Mr. Falade's Motion (Dkt. No. 120).

### 2. *Leon* good-faith

In the alternative, Mr. Falade argues that given "the dearth of facts in this affidavit," the good-faith doctrine of *United States v. Leon* cannot save this warrant. (Dkt. No. 120 at 5.) The Government responds that even if the Court were to conclude the affidavit did not establish the requisite nexus, any evidence seized from the phone would be admissible under the good-faith exception to the exclusionary rule. (Dkt. No. 127 at 10.) The Court agrees with the Government that even if a nexus was lacking, law enforcement acted in objectively reasonable reliance on the search warrant for the Samsung Galaxy, and the exclusionary rule does not apply. *See United States v. Leon*, 468 U.S. 897, 922 (1984).

In *Leon*, the Supreme Court held that the exclusionary rule did not apply when police obtain evidence by acting in "objectively reasonable reliance" on a search warrant. 468 U.S. at 922 (1984); *see also Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting *Leon*, 468 U.S. at 922)). The purpose of the exclusionary rule is to deter police misconduct, and where the police have relied, not on their own assessment of the evidence, but on the probable cause determination of a neutral and disinterested judge, there is no police misconduct, and thus, nothing that can be deterred through application of the exclusionary rule. *Herring*, 555 U.S. at 142; *Leon*, 468 U.S. at 916.

The *Leon* good-faith exception does not apply in the following four scenarios:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial

> role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017) (quoting *Leon*, 468 U.S. at 923) (cleaned up). Here, the affidavit did not contain a false statement that was made knowingly and intentionally, or with reckless disregard for the truth. There is nothing to indicate that the issuing magistrate judge abandoned their judicial role in issuing the warrant. The Court has already found that the affidavit was not lacking in probable cause and contained a sufficient nexus between criminal activity and the seized Samsung Galaxy. Finally, the face of the warrant was not deficient.

Accordingly, the Court recommends denying Mr. Falade's Motion (Dkt. No. 120) because there was a sufficient nexus in the affidavit, and even if the requisite nexus was lacking, *Leon* good faith would apply.

## III. RECOMMENDATION

Accordingly, based on the foregoing and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Mr. Emmanuel Falade's Motion to Sever (Dkt. No. 117) be **DENIED**;

2. Ms. Roberts's Motion to Suppress (Dkt. No. 118) be **DENIED as moot**;

3. Ms. Roberts's Motion to Dismiss Count One as Duplicitous (Dkt. No. 119)

be **DENIED**; and

4. Mr. Christopher Falade's Motion to Suppress (Dkt. No. 120) be **DENIED**.

Date: November 24, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).